Mr. Dreymeier May it please the Court, as this Court held in ANCORA, which we addressed in the 28J letter, improving computer security can be non-abstract improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem. And that is precisely what we have here. In fact, the analogy between the systems and improvements here and ANCORA are very stark. In ANCORA, as here, the problem was that the software license was subject to hacking. That's at 1344. Now, some systems had tried to improve upon the prior art, such as with a unique identification code. And that's true here as well, as in the Wessinger patent that is described and disparaged in the specification in these patents. The other attempts had been to place the license in a specific place, a non-modifiable ROM. What the claims that were upheld there did was it broke with that traditional approach by placing the license in a different place, in a modifiable part of the memory in the BIOS. That is the same thing as we have here. Prior art systems had the problem of all of the identification information coming in through the access channel, whether it was in-band or whether even it was a partially out-of-band system. In all of those systems, the identification information was coming back in through the access channel, which made it particularly susceptible to hacking. And in a self-authenticating environment, where everybody is really operating in an anonymous fashion, and if you have the credentials, you look like the real person, whether you may be a hacker or not, there was no way to authenticate that the person who claimed the credentials was who they said they were. And so these claims solved that problem by relocating the authentication to a different place, just as was true in ANCORA. In contrast to the other systems where you had either in-band or even partially out-of-band, always coming back through the access channel, here you have two separate channels. You have the access channel... Suppose we were to disagree with you on that and to say that the idea of having two separate channels is an abstract idea, that it doesn't involve the complete separation, doesn't involve an inventive concept. Is there anything about the diversion, the interception, that is an inventive concept? I think here, Your Honor, it is true that the specific solution... Because here we don't purport to preempt the notion of complete out-of-band communication or even complete out-of-band authentication, because you could have a system in which the accessor initiates the communication with the security computer and establishes the authentication channel. That would not be covered by these claims if it simply, at that point, goes directly from the security computer to the host computer and says, grant access. Okay, but I understand that you're arguing that that means that there's not complete preemption here, but are you arguing that the diversion, the interception, is itself an innovative concept? I think that the interception device really underscores the inventive aspect of this because... It's not in and of itself an inventive concept. Not in and of itself, but what it does is it underscores that, as in DDR, you're in a system in which identification is verified. In the traditional method, it goes straight down the access channel, and all you're able to do is establish that the credentials are credentials that match up with authorized credentials, but you're not able to establish that the person presenting those credentials is, in fact, the authorized user. What this does is... And the traditional process by sending it off into the separate authentication channel, and then in the separate authentication channel, there are specific components that are arranged in a way that allow you to know that the accessor is, in fact, the authorized accessor, and that's because you have a predetermined address or telephone number that you reach out to establish that answers and is able to supply the predetermined data in response, again, through the authentication channel, allows you to know that it is, in fact, the authorized user. And, in fact, unlike the prior art systems, which some of which did use biometric data, but use of biometric data in a system in which all the information is coming back through the access channel doesn't really significantly improve security, because if you have a hacker there and they capture the biometric data, your fingerprint, all that is is digitized data. It's the same as any other digitized data, and it could be replicated by the hacker in a later attempt to access. If, however, you have two physically separate channels, the authentication channel completely independent of the access channel, then if you use biometric data, it's not going to be captured unless the hacker simultaneously is hacking two different channels at the same time. This way, you know that the person who's inputting the biometric data in the authentication channel is, in fact, the authorized user. It's those improvements over the prior art that are which is a motion to dismiss under Berkheimer and Atrix, under BASCOM. It has to be accepted as true. And I think, really, again, as in CORA, the court said, how are we to know whether these are, in fact, improvements over the prior art as they are claimed to be in this specification? We have to accept that that's true at this point in the litigation. What the court has consistently advised against is treating the 101 inquiry as though it were 103 light. And that is particularly the opposite here, because these claims have already survived multiple 103 challenges. There were two IPRs, each with multiple grounds, that were not instituted because the prior art that they had to cobble together three or more references did not disclose all of the limitations of these claims. And so where you have something that is sufficiently robust and inventive, non-obvious, to survive multiple 103 challenges, to allow somebody to waltz in and say, well, but it's a lot like if you try to go into a preschool and try to somehow map it onto. But they did say that every step was known and that the combination of steps was known. I mean, it isn't that clear as a given. Is it that these other aspects were set aside? Your Honor, I want to be clear. The preschool analogy that they used to suggest that all these steps were already known is not our system. In that hypothetical that they give forward, Aunt Sally, whoever the relative is that's coming, all they are able to do is to verify that Aunt Sally has permission to pick up the child. They're not able to verify that Aunt Sally is Aunt Sally. It's the latter problem that is the real problem of computer technology, where you have a man in the middle, the hacker, in the self-authenticating environment. Because whoever comes in and says, I'm Aunt Sally, looks just like Aunt Sally. They're anonymous. They're just presenting the credentials. All you need to do is change the hypothetical and ask the parent what Aunt Sally looks like. Well, Your Honor, but again, I think because of the unique nature of computer technology, it could be Aunt Sally's twin. Aunt Sally has authorization, but Aunt Bertha, who is Aunt Bertha, can't distinguish them from the credentials. From the credentials, they each have the same driver's license. You can't distinguish them. That's the true problem of user authentication. Authenticating that the person is who they claim to be. All of the other systems are designed to make sure that the credentials are authorized credentials. They don't authenticate that the user accessor is the accessor. That's what these claims do, precisely because of the particular architecture that they use. It may be that the elements of it, a router, a security computer, etc., are known elements, but they are arranged in a way here that allow you to do something that prior art was not able to do. It's that improvement that is claimed. Again, it's not all out-of-band. There are lots of out-of-band systems that don't do it the way that are claimed here. In fact, Wessinger is a version of out-of-band. It's partial out-of-band because you send the information out through out-of-band, but it comes back through the access channel. Again, as I said this completely out-of-band system does, arranged as these elements are arranged, is it allows you to ensure that the person seeking to access is in fact the authorized accessor. What allows you to do it is the advancement, the capability of technology, and what they say and held was that this is an old idea. It's just that we now are able to implement it. Your Honor, I think that what's true, again, sending the PIN out through the mail for the bank example, which they give, and then you bring the PIN back in. All the PIN is is a password. That's the old art. All the PIN is is the password because it's coming back in through the authentication channel. You may be an imposter, but if you were there when the mail was delivered and you picked up the PIN, you're able to use the PIN. You don't know whether the person is who they claim to be, only that they have the right credential. What this system does is organize things, especially, I think it's critical again, the physical separation of the channels so that no hacker can get the authenticating information because they are not the hackers in the access channel. They're not in the authentication channel because there's nothing there. There's no information there. They're not in the authentication channel because they're not in the authentication channel. If, for example, you use the biometric data, the fingerprint, they don't get it and you know that the accessor is the accessor. It's that unique combination and that the specification chooses that language. And in Berkheimer and Atrix and Bascom, the court has said that you have to accept these allegations that it is an improvement. It is not a well understood common routine arrangement. That it's one that is not and it improves on the prior art. Those have to be accepted as true at this point in the process. So at most, we would be entitled to a remand to establish that those facts as alleged in the specification are true. I think that you can actually resolve this at step one for the reasons that I've already stated. I would like to reserve the balance of my time. Okay, thank you. I'll hear from Mr. Annapol and you're ready. May it please the court. The decision below should be affirmed because the district court correctly held that the focus of the claims here is out-of-band authentication and that idea is not specific to computer technology. And we can see that from this court's cases such as secured mail, PRISM, both of which were addressed in the briefs, as well as the case that came out after our briefing was complete, Asghari-Kambrani, number 2016-2415, which also dealt with a form out-of-band authentication. So there's been three cases where specific ways of performing authentication in a computer network were held to be abstract. And those are the cases that we're relying on. The cases that opposing counsel, Strike Forces counsel is pointing to, do not relate even to authentication. They're just simply not as analogous as the cases that we're relying on. And the reason that secured mail, PRISM, and Asghari-Kambrani held the claims they're ineligible is because authentication, even when using different communication channels, is not a computer-specific problem. And the use of multiple channels is not a computer-specific solution. Communication channels could be paper mail, they could be telephones, they could be all manners of different communication channels. And that's what our preschool analogy illustrates. And I'll note that in PRISM and secured mail, this court relied on analogies to determine that the ideas at issue were not computer-specific. And that's what we've done here. I do want to address Strike Forces' criticism of our analogies. They mentioned this idea of authenticating who Aunt Sally is. I don't see anything in the claims that require a verification of the identity of a person apart from verifying that they have the correct information. So there's nothing in the claims that reflects this idea of authenticating who Aunt Sally is as opposed to just that they have the right login identification. And so I think that that distinction just doesn't work. I'd also like to address ANCORA. So that case, again, found that the claims were not abstract because they were directed to a computer-specific solution to a computer-specific problem. Specifically, there was this BIOS memory and it was alleged that the structure of this BIOS memory, which is of course unique to computers, is what allowed the solution there to prevent hacking. So specifically, the BIOS memory had multiple areas, the BIOS ROM and the BIOS E-squared PROM. And that later part is where this license verification structure was stored. And the reason that that provided an improvement to computer to access for a programmer. And when you do access it improperly, there's a higher risk that the computer will be disabled. So they're relying on this very specific computer structure, a memory within the computer that has different traits from other memories that make tampering with that memory less likely to be successful for a hacker. Here, we're not seeing any structure that is computer-specific that's being relied on to provide the alleged benefits. The supposed resistance to hacking comes from the use of two separate communication channels. Communication channels, as I've said, are not computer-specific. And using two separate communication channels improves security outside of computers as well. And we saw that in Secured Mail. We saw that in Asghari Kamrani. And let me just explain a little bit more since that wasn't in the briefs because it hadn't come out yet, why there were two channels at issue there. So I do want to note that that's a Rule 36 Affirmative. So we don't know what the reasoning of this court was, but we do know. And it's not precedent. That's correct. It's not precedent, but it is persuasive, I believe, under Federal Circuit Rule 32.1. So what we know is the content of the claim there. Rule 36 is persuasive? Non-precedential dispositions are persuasive. I don't remember any case that says Rule 36 disposition is persuasive. I believe, well, I guess Your Honor is of course free to decide however persuasive you think it is. But I'll just explain what the facts were there and what the claim said. The claim said that you have a central authority, an external, I'm sorry, a central entity, an external entity, and a user. The user is trying to access the external entity. So they first start a transaction with that entity. And then in order to authenticate that transaction, they separately communicate with the central entity to get a code. So there's communications between the external entity, that's one communication path, and the user, and communications between the central entity and the user. And those two separate communication paths are both needed to perform the authentication. But setting that aside, since it is a Rule 36 judgment, let's take a look at secured mail. Again, that's a case we've pointed out uses not just out-of-band authentication, but completely out-of-band authentication, which is what Strikeforce is relying on here. And in that case, the, a person receives a piece of mail, you know, through the normal postal service, and then wants to validate or authenticate that mail. And so they initiate a computer connection. And over the computer connection, you authenticate that the mail is authentic. And that's a bi-directional, out-of-band communication because it's separate from the paper mail. You're presenting arguments under 102 or 103, not 101. No, I disagree, Your Honor. I'm explaining that in these previous cases, secured mail, PRISM, Mozgare-Qamrani, this court found that all of the claims were directed to abstract ideas, not because they're old. But those cases depend on their facts. I know you're drawing an analogy of the facts, but the 101 cases, the abstract ideas, lines have been drawn as to whether it is or isn't an abstraction. The point that I'm trying to make, Your Honor, is that what made the ideas in those claims abstract is that they did not provide a technology-specific solution to a technology-specific problem. But your friend says that in this case, technology-specific details sufficiently have been provided. And the details opposing counsel provides that are allegedly technology-specific is this use of two separate channels. And that's why I'm pointing to secured mail, to show that the use of two separate channels to perform authentication is not technology-specific. Secured mail negates the idea they're proposing that the use of two separate channels to perform authentication is technology-specific. So what would have been needed, the code, the computer code, to overcome this gap? It's, no, Your Honor, it's not a question of inadequate disclosure of the use of two separate channels. It's that the use of two separate channels itself is not technology-specific because the use of communication channels is not limited to computers. And that's why we provide this analogy to show that the use of multiple channels for authentication is performed outside of the computer context. So they would need a completely different focus of their claims. They would need something like exploiting the structural traits of BIOS, as in ANCORA, as distinguished from other computer memory. That is a computer-specific solution because it arises specifically from the structure of a computer component. Here, there's nothing they're pointing to that arises specifically from the structure of a computer component that they're relying on for the solution. The whole focus is computer hacking. I'm trying to understand where the line appropriately should be drawn between an adequacy and overcoming 101 and not doing so. I think characterizing this as hacking, Your Honor, is too general of a characterization to be useful. What they mean by hacking here is simply intercepting data that's in transit, right? Intercepting information that's being communicated. There's no dispute that that's the target. Sorry? Interception. To avoid interception. Right. To avoid interception of information being communicated. That problem is not computer-specific because information is routinely intercepted in communication channels. Well, it's computer-specific, but it's applying the same concept that exists outside of computers in the computer context. The word hacking is a computer-specific word, but I'm saying the substance of what they were communicating in a communication channel is not computer-specific. And that's why they refer to ANCORA because ANCORA used the word hacking, but it was using that word to refer to something different. It was using that word to refer to tampering with data stored on the computer to obtain rights to run software that you did not own. So it would have solved the 101 problem if they had explicitly said, we're looking at computer hacks? No, Your Honor. The word hacking in this context simply means intercepting communications in a communication channel, which is not computer-specific. So that would have had to say intercepting computer communications? Is that the difference that you're doing? No, no. That's just a verbal formulation, Your Honor. I'm talking about the substance of what they're pointing to. I'm trying to get at the substance of where, when it's crystal clear they're talking about computers and hacking computer communications. So I'm trying to understand the gap between 101 and 103. 103 is about what's old. 101 is about what's computer-specific. And the reason I say that the so-called hacking here is not computer-specific is because it's no different than intercepting communications in a non-computer communication channel, unlike the hacking in ANCORA, which was specifically about accessing computer memory and the use of different types of computer memory. So hacking for, let me also make this point. Hacking is the problem, right? In order to have a non-abstract solution, you need both the problem to be computer-specific and the solution. So I think for the reasons I've already explained, that they don't have a technology-specific problem here, but that's not the only issue. The other issue is, do they have a computer-specific solution? And the answer to that is also no, because their alleged solution is to use two separate communication channels in case the communications in one channel are intercepted. And that solution is not specific to computers because it works with paper mail, as we saw in secured mail. It works with telephones, as we see in our preschool analogy. And so even if they did have a computer-specific problem of hacking, their way of preventing that hacking is not a computer-specific solution. And I do want to also address this interception issue, because this is... But that's, you can't mean that. You say even if we all agree that this is a computer problem, don't bother looking at computer issues and solutions? If they had a computer-specific solution, Your Honor, that would be patent eligible. But why does that convert the issue into an abstract idea? That is the dividing line that this Court has identified between abstract ideas and patentable computer-specific improvements. So in ANCORA, in ENFISH, in FINGEN, the common trait that links all of those cases, Your Honor, is that they don't hear that there is a computer-specific solution to a computer-specific problem, and they don't hear. And that's why... But this solution is implemented by a computer. Implementing an information-based solution in a computer environment is not enough. And we pointed to, for example, Intellectual Ventures I versus Capital One Financial for that proposition. But that's well-established in the case law. Just as implementing escrow or intermediated settlement in a computer environment under ALICE didn't prevent the claims from being abstract. And that's what we have here, a communication channel solution that's simply implemented in a computer environment. I don't deny that it could be useful, just as implementing intermediated settlement in a computer environment could be useful. But it doesn't make it computer-specific, and that's a crucial dividing line in the case law. Before I run out of time, I just want to address this interception issue. The agreed construction of interception device is something that prevents the host computer from receiving. That is a purely functional and generic construction, and such purely functional and generic elements cannot provide an inventive concept as a matter of law. I also want to point out that the interception device does not even have to be separate from the host computer according to Strikeforce itself, for example, at Appendix 799. And there's embodiments that Strikeforce has referred to in its reply brief showing that the interception device and the host computer may be the same device. So to say that the interception device shields the host computer is false because Strikeforce has said that the interception device may be part of the host computer. And even if that wasn't the case, because it's purely functional and generic, it cannot provide an inventive concept as a matter of law. Thank you. Mr. Drymeier, you have four minutes. Thank you, Your Honor. I want to start with the fact of where you have to draw the line. Because as this court has noted, if you draw it at too high a level of generality, the interception device swallows the rule. And my opponent suggested that these claims are not about user identification, but that fails to recognize the critical feature of these claims. And I want to just point to several points where that is clear. In this specification, column two, lines 20 to 22, it says that the technical problem that's addressed is that the hacker is in a self-authenticating environment. In other words, the hacker appears to be... That's true. He was wrong about that. But the fact is that in the non-computer context, we have the same problem with the same solution. Well, Your Honor, as I think the case that says this best is a recent case that we did not cite. It's Data Engine Technologies v. Google 906 F3RD 999 2018, which came down after briefing, made clear that it's not sufficient just to be able to trace to some real-world analogy. It has to be an opposite one. And here, the preschool analogy is not opposite because in order to actually practice these claims, in every instance when anybody, even if they're on the permitted list, comes to pick up the child, you would have to call that person's cell phone, which they would have to have in hand to be able to verify that they are, in fact, the person who's on the list and is an authenticated user. That never happens. So all they're doing is they're sort of like waving their hand. Something looks like it. It's the precise problem of the moment to be late. It sure sounds like something that happens pretty frequently in the real world in the era before computers. I mean, take the example of somebody picking up cash from a bank with a note from the depositor's landline to ask if the person who's picking it up is the person who's authorized to pick it up. I mean, you can come up with lots of different examples of this dual-channel utility. But once again, Your Honor, what that doesn't do is authenticate that the person who's there is, in fact, the employee, as opposed to someone who's masquerading as the employee. And this goes back to whether— Without limit. Isn't that part of the problem? And I think part of the foundation for the decision that this was abstract. Well, Your Honor, what's critical is that these claims, because they reach out, these separate authentication channels, you reach out to a cell phone or PDA that's already identified in a database. You reach out. And the person who answers it has to give back predetermined information. This is along a second channel. So it's not somebody who's sitting in the access channel. They may have got it before. That is a significantly higher degree of certainty. But in the bank example, they say, put the guy on the phone. I want to listen to his voice to see if this is the person that I sent. I mean, voice recognition, same as you. Your Honor, again, the fact that you could conceive of a system in the real world, in the brick-and-mortar system, that is not sufficient. That was true in DDR, where you could conceive of the store within a store. But that wasn't the problem that was being addressed. And it didn't work the same way. In DDR, as here, there's the interception. You bring it over to the other system. I just want to say, quote, this is at COM 12 lines 28 to 33 that reflect that in a computer network system, in a corporate system, everybody has their user ID and password. Verifying that they are an authenticated user in that sort of first-level way is not that significant. What is significant is verifying, and this is what it says, authentication of the person seeking access is the most significant. And that is what these claims do. They improve the other systems by providing a completely physically separate authentication process using all of these elements, the interception device, the security computer, the subscriber database, the authentication channel that's completely physically separate and shares no facilities with the access channel, to a predetermined number where the user has to input back in, back through the authentication channel, predetermined data, including biometric data. That system provides a level, it may be true, Your Honor, that no system can give 100% certainty that the user is the user. This system improves it. It's true in NCORA as well. It wasn't absolutely impenetrable, but here as well. What you've done is improved dramatically the security and the ability to identify the user as the user. At the very least, that is what the specification says is true. Whether that is or is not factually true is something that should be determined as a matter of fact on remand. Thank you very much. Okay. Thank you. Thank you both. The case is taken under submission. Thank you.